**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| IN RE MOTILITY DATA BREACH LITIGATION | Case No. 3:25-cv-00330<br>Judge Walter H. Rice<br>Magistrate Judge Caroline H. Gentry |

**PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs G. Scott Lockwood, Heather Reynicke, Christopher Santora, Donna Mathews, John Langan, Nancy Langan, Stephen Duesler, Patrick Hubley, and Peggy L. Koller (collectively, "Plaintiffs") respectfully move under Rule 23 of the Federal Rules of Civil Procedure for an order: (1) certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23; (2) finding that the Settlement Agreement ("S.A."), ECF No. 15-1, is fair, reasonable, and adequate, was entered into in good faith and without collusion, and approves and directs consummation of this Settlement Agreement; (3) grant Class Counsel $1,649,833.33 in attorneys' fees, representing one-third of the $4,949,500.00 non-reversionary common fund; (4) $17,105.61 in reimbursement of litigation costs and expenses; and (5) Service Awards of $2,000.00 to each of the nine Class Representatives.

The grounds for this Motion are set forth in the accompanying Memorandum in Support and the Declaration of Terence R. Coates in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards and Final Approval of Class Action Settlement ("Final Decl."), attached as **Exhibit 1**; the Declaration of Cameron R. Azari Regarding Implementation and Adequacy of Notice Program ("Azari Decl.") attached as **Exhibit 2**; Plaintiffs' Unopposed Motion for Preliminary Approval, previously granted (ECF No. 15) ("Motion for Preliminary Approval" or "MPA"); and such other evidence or argument that may be presented to the Court in connection with the Final Approval Hearing. A Proposed Order is attached as **Exhibit 3**.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ vii

**MEMORANDUM IN SUPPORT** ........ 1

**I. INTRODUCTION** ........ 1

**II. BACKGROUND** ........ 2

A. Procedural History ........ 2

B. Terms of the Settlement Agreement ........ 4

C. Attorneys' Fees, Costs and Service Awards ........ 5

D. The Notice Program ........ 6

1. Individual Notice – Direct Mail ........ 6

2. Notice Results ........ 7

3. Settlement Website ........ 7

4. Toll-Free Telephone Number and Other Contact Information ........ 8

E. Opt-Outs and Objections ........ 9

F. Claim Submission & Distribution ........ 9

**III. ARGUMENT** ........ 9

A. Final Class Certification for Settlement Purposes is Appropriate ........ 9

Nothing has occurred since the Court preliminary approved class certification for settlement purposes to disturb the Court's conclusion that such certification is warranted. All necessary factors under Civil Rule 23(a) and (b)(3) are satisfied because Plaintiffs are adequate class representatives who are similarly situated with thousands of other class members, all of whom bring claims arising out of the same event. *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 745 (E.D. Wis. 2024).

B. The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances and was Successful. ........ 10

Best notice practicable means individual notice to all members who can be identified through reasonable effort. Approximately 94.9% of identified Settlement Class Members received direct notice, which more than satisfies the requirements of Rule 23 and due process. *Eisen v. Carlisle &*

*Jacquelin*, 417 U.S. 156, 173 (1974); *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-333, 2022 WL 2125574 (S.D. Ohio June 13, 2022) (Rice, J.).

C. The Settlement Agreement Merits Final Approval ............................................. 11

The Court must decide whether the settlement is fair, reasonable, and adequate, and consider whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the settlement adequately compensates the class; and (4) the settlement treats class members equitably relative to each other. The Sixth Circuit requires that courts also consider (1) the likelihood of success on the merits of the case, (2) the complexity, expense, and duration of discovery and litigation, (3) the opinions of class members, representatives, and counsel, and (4) the risk of collusion or fraud." Fed. R. Civ. P. 23(e)(2); *In re E. Palestine Train Derailment*, 158 F.4th 704 (6th Cir. 2025).

1. The Class Representatives and Class Counsel Have Adequately Represented the Class ........................................................................ 12

Plaintiffs and Class Counsel are adequate representatives. Plaintiffs have no conflicts with the Class and have participated actively in the case. Class Counsel have significant experience in class and complex litigation, including hundreds of data breach class actions in state and federal courts throughout the country. Their adequacy is shown by the success of the notice program, and the high number of claims for benefits made, with no objections and only five opt-outs. *Olden v. Gardner*, 294 F. App'x 210 (6th Cir. 2008).

2. The Settlement Was Negotiated at Arm's Length, and There is No Risk of Collusion or Fraud ........................................................................ 13

Settlements resulting from arm's-length negotiations conducted by court-approved counsel are presumptively reasonable. Courts presume the absence of fraud or collusion unless there is evidence to the contrary. This Settlement took months of intensive, arms-length bargaining to finalize under the guidance of an experienced mediator. *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-CV-3499, 2024 WL 958726 (S.D. Ohio Mar. 5, 2024); *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2025 WL 2119389 (S.D. Ohio July 29, 2025).

3. The Likelihood of Success and the Complexity, Expense, and Duration of Litigation Balanced Against the Proposed Recovery ................................ 14

The court must consider in this regard: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and (iii) the terms of any proposed award of attorney's fees, including timing of payment. Fed. R. Civ. P. 23(e)(2)(C). There are no agreements in connection with the proposed settlement to be identified under Rule 23(e)(3).

*i. Costs, Risks, and Delay of Continued Litigation* ......................................14

The adequacy of the settlement's proposed relief far outweighs the potential costs and risks of continued litigation. Unless a class action settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results. data breach cases like this one generally face substantial hurdles on the merits and at class certification, which can take years to reach, and is subject to interlocutory appeal. This Settlement affords fair and reasonable tangible benefits, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. *Brent v. Midland Funding, LLC*, No. 3:11-CV1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000); *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548 (S.D. Ohio Apr. 11, 2025); *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-CV-3499, 2024 WL 958726 (S.D. Ohio Mar. 5, 2024).

*ii. Effectiveness of Proposed Method of Distributing Relief* ..........................16

Because this class action relates to the unauthorized access to Class Members' Private Information that Defendant possesses, providing payments to Class Members should prove relatively straightforward. This information was also the basis of the Notice Program, which reached class members very effectively. The relief offered through the Settlement is appropriate and fair, comprising the opportunity to obtain recovery for out-of-pocket losses, alternative pro rata cash payments, and credit monitoring, which will be paid directly to class members within 30 days of the Settlement becoming effective. *In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-CV-776, 2024 WL 6076646 (S.D. Ohio Sept. 10, 2024).

*iii. Terms of Proposed Award of Attorneys' Fees* ..........................................17

This Settlement is not contingent on approval of the request for attorneys' fees, costs, and Service Awards, and the remaining provisions of the Agreement shall remain in force if the Court denies the requests or grants it only in part. *Carmen v. Health Carousel, LLC*, No. 1:20-CV-313, 2025 WL 892586 (S.D. Ohio Mar. 24, 2025). However, the requested fees are fair, reasonable, and routinely approved.

4. The Likelihood of Success on the Merits Balanced Against the Amount and Form of Relief Offered by the Settlement Weigh in Favor of Approving the Settlement ..........................................................................18

The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits, balanced against the relief offered in the settlement. Here, the value of roughly $6.92 per Settlement Class Member) is well within the range of reasonableness compared to other common fund data breach settlements with similar class sizes. *In re Gen. Tire & Rubber Co. Securities Litig.*, 726 F.2d 1075 (6th Cir. 1984); *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014

(6th Cir. Nov. 27, 2017); *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548 (S.D. Ohio Apr. 11, 2025).

5. The Settlement Treats Settlement Class Members Equitably Relative to Each Other ......................................................................................19

The Settlement provides all Settlement Class Members with the opportunity to claim one of two monetary payments and credit monitoring. The Settlement provides all Settlement Class Members with the opportunity to claim one of two monetary payments and credit monitoring. *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2025 WL 2119389 (S.D. Ohio July 29, 2025).

6. The Opinions of Class Counsel, the Class Representatives, and the Class Members Support Final Approval.................................................................19

The recommendation of Class Counsel, skilled in class actions, that the Court should approve the Settlement is entitled to deference. Here, the Parties were able to thoroughly evaluate the strengths of the case through informal discovery before reaching a settlement in principle. Plaintiffs themselves support this Settlement, and Class Members have also responded positively. *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548 (S.D. Ohio Apr. 11, 2025); *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).

D. Class Counsel's Requested Attorneys' Fees are Reasonable ...............................20

A lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. The court is to make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved. One-third of a common fund is reasonable and routinely approved in analogous data breach class action settlements in this District and Circuit. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993); Fed. R. Civ. P. 23(h).

1. It is Appropriate to Apply a Percentage-of-the-Common-Fund Analysis ......................................................................................................21

Courts apply a two-step reasonableness analysis: first, the court selects the appropriate methodology—either the percentage-of-the-fund or the lodestar approach—and then it tests the reasonableness of the resulting award against the six *Ramey* factors discussed below. The percentage of the fund has been the preferred method for common fund cases, where each class member is entitled to a share. Percentage awards typically range from 20 to 50 percent of the common fund; one-third is standard in data breach cases within the Sixth Circuit and in Ohio. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993); *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14-cv-1071, 2018 WL 11357092, (S.D. Ohio Aug. 24, 2018); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009); *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271, 2023 WL 2562407 (W.D. Ky. Mar. 17, 2023); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001).

2. The Ramey Factors Support the Reasonableness of the Requested Award....22

Courts in this Circuit assess the reasonableness of a percentage fee by reference to six factors drawn from *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974): (1) the value of the benefit conferred on the class; (2) society's stake in rewarding attorneys who achieve such benefits in order to maintain an incentive for similar actions; (3) whether counsel undertook the representation on a contingent basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel for both sides.

*i. The Results Achieved in this Litigation*....23

The first *Ramey* factor is often the most important. The Settlement yields a theoretical recovery of approximately $6.92 per Class Member, and the per-claimant cash recovery is expected to substantially exceed that, consistent with the claims-adjusted recoveries approved in comparable data breach settlements. The Settlement's value is further bolstered by the fact that Defendant had meaningful defenses to liability. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011).

*ii. The Requested Fee Provides Adequate Incentive to Undertake this Representation for the Benefit of Others*....24

Without counsel willing to advance the time and costs needed to prosecute consumer class actions, individuals with modest damages would have no effective means of redress. The requested fee supports the continued availability of competent counsel to bring data breach cases of this type, and this factor supports approval. *Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*, No. 15-CV-2956, 2022 WL 4079559 (S.D. Ohio Sept. 6, 2022).

*iii. Class Counsel Undertook this Representation on a Contingent Basis*....25

This factor addresses the risk that attorneys will not recover compensation for work on a case. Class Counsel advanced all out-of-pocket expenses and devoted significant time to the matter with no expectation of payment absent success, which weighs in favor of the requested fee. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007); *Whitlock v. FSL Mgmt., LLC*, No. 3:10-cv-562, 2015 WL 9413142 (W.D. Ky. Dec. 22, 2015); *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548 (S.D. Ohio Apr. 11, 2025).

*iv. The Value of the Services Supports the Requested Fee*....25

In percentage-of-the-fund cases, a discretionary lodestar cross-check can confirm the reasonableness of a percentage award. Class Counsel are prepared to submit detailed time and expense records for the Court's review upon request. They have collectively expended approximately 416 hours of time on this matter, at customary hourly rates that have been approved as reasonable in other complex class actions in this District, with approximately 40 hours to come, yielding a lodestar multiplier of approximately 4.4–4.8.

*v. The Complexity of the Litigation Supports the Requested Fee* ..................26

Data breach class actions are notoriously complex, involving rapidly evolving legal doctrines on Article III standing, novel applications of negligence and contract principles to electronic data, technical issues regarding cybersecurity practices and forensic causation, and significant variations in state-law consumer protection regimes. This complexity supports the requested fee award. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (C.D. Cal. 2008).

*vi. The Professional Skill of Counsel on Both Sides Supports the Requested Fee* .........................................................................................27

Class Counsel here all devote substantial portions of their practices to data breach and privacy class litigation and are regularly appointed as class counsel in similar matters. This Court has previously recognized Markovits, Stock & DeMarco, LLC for its experience and competence in class and other complex litigation. Defendant has been also represented by experienced counsel with deep experience defending data breach litigation. *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574 (S.D. Ohio June 13, 2022).

*vii. The Fee Request Is Supported by the Class Representatives*.....................27

Each Class Representative has reviewed the Settlement, the fee request, and the requested expense reimbursement, and each supports Class Counsel's application as filed. This provides independent confirmation of the reasonableness of the fee request.

E. Class Counsel's Requested Costs Are Reasonable ...............................................28

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses and costs incurred in prosecuting claims, including filing fees, costs incurred in document productions, consulting with experts, travel and other litigation-related expenses. *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003); *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

F. The Requested Service Awards are Reasonable ..................................................28

Service awards are efficacious in encouraging class representatives to come forward and rewarding individual efforts on behalf of the class. Class Representatives in this case materially contributed to obtaining the Settlement and Courts routinely approve service awards greater than those sought here in comparable data breach class actions. *In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548 (S.D. Ohio Apr. 11, 2025); *Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003).

**IV. CONCLUSION** .........................................................................................30

**CERTIFICATE OF SERVICE** ...........................................................................31

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)........................................................................................................ 20

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996) ........................................................................ 20, 23

*Brent v. Midland Funding, LLC*,
No. 3:11-CV1332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011)................................... 14

*Brotherton v. Cleveland*,
141 F. Supp. 2d 907 (S.D. Ohio 2001) ............................................................................ 22

*Carmen v. Health Carousel, LLC*,
No. 1:20-CV-313, 2025 WL 892586 (S.D. Ohio Mar. 24, 2025)..................................... 17

*Cheryl Gaston v. FabFitFun, Inc.*,
No. 2:20-CV9534, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ..................................... 15

*Connectivity Sys. Inc. v. Nat'l City Bank*,
No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011)............................... 22, 24

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)........................................................................................................ 10

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) ......................................................................................... 12

*Hadix v. Johnson*,
322 F.3d 895 (6th Cir. 2003) ........................................................................................... 28

*Hammond v. The Bank of N.Y. Mellon Corp.*,
No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010).................................... 15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)........................................................................................................ 21

*In re Advoc. Aurora Health Pixel Litig.*,
740 F. Supp. 3d 736 (E.D. Wis. 2024)............................................................................ 10

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)...................................................................................... 2

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................................ 14

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ........................................................................ 25, 26

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................ 28

*In re Cinfed Fed. Credit Union Data Breach Litig.*,
No. 1:23-CV-776, 2024 WL 6076646 (S.D. Ohio Sept. 10, 2024) ...................................... 16, 17

*In re CorrectCare Data Breach Litig.*,
No. CV 5:22-319, 2024 WL 4211480 (E.D. Ky. Sept. 17, 2024) ........................................... 29

*In re E. Palestine Train Derailment*,
158 F.4th 704 (6th Cir. 2025) ..................................................................................... 12, 29

*In re Gen. Tire & Rubber Co. Securities Litig.*,
726 F.2d 1075 (6th Cir. 1984) ........................................................................................ 18

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (C.D. Cal. 2008) ........................................................................... 26

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 1029 (S.D. Ohio 2001) ........................................................................... 25

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) .............................................................................. 10

*In re Wasserstrom Holdings, Inc. Data Breach Litig.*,
No. 2:23-CV-2070, 2025 WL 1563548 (S.D. Ohio Apr. 11, 2025) ......... 15, 18–20, 22–25, 28, 29

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) ................................................................................... 13

*Jackson v. Nationwide Ret. Sols., Inc.*,
No. 2:22-CV-3499, 2024 WL 958726 (S.D. Ohio Mar. 5, 2024).................................... 13, 16, 29

*Karpik v. Huntington Bancshares Inc.*,
No. 2:17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ............................................ 28

*Linman v. Marten Transport, Ltd.*,
No. 3:22-CV-204, 2024 WL 5076031 (W.D. Wis. Dec. 11, 2024)............................................ 29

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d 766 (N.D. Ohio 2010).............................................................................. 22

*Long v. HSBC USA Inc.*,
No. 14 CIV. 6233, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015)............................................ 15

*Lott v. Louisville Metro Gov't*,
No. 3:19-CV-271, 2023 WL 2562407 (W.D. Ky. Mar. 17, 2023) .............................................. 22

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) .................................................................................................. 21

*Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*,
No. 15-CV-2956, 2022 WL 4079559 (S.D. Ohio Sept. 6, 2022) ................................................ 24

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006).............................................................................................. 28

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ........................................................................................... 18

*O'Donnell v. Fin. Am. Life Ins. Co.*,
No. 2:14-cv-1071, 2018 WL 11357092 (S.D. Ohio Aug. 24, 2018) ........................................... 21

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) ............................................................................................. 13

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974) ................................................................................................. 22

*Rawlings v. Prudential-Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) ................................................................................................. 20, 21

*Robles v. Comtrak Logistics, Inc.*,
No. 15-CV-2228, 2022 WL 17672639 (W.D. Tenn. Dec. 14, 2022) .......................................... 22

*Savidge v. PharmSave, Inc.*,
727 F. Supp. 3d 661 (W.D. Ky. 2024)....................................................................................... 15

*Shy v. Navistar Int'l Corp.*,
No. 3:92-CV-333, 2022 WL 2125574 (S.D. Ohio June 13, 2022)....................................... 11, 27

*Swigart v. Fifth Third Bank*,
No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014)................................................. 23

*Tate v. EyeMed Vision Care, LLC*,
No. 1:21-CV-36, 2025 WL 2119389 (S.D. Ohio July 29, 2025)......................................... 14, 19

*Thomas v. Mitsubishi Electric Automotive Am., Inc.*,
No. 1:24-CV-422, 2026 WL 1469413 (S.D. Ohio May 26, 2026) .............................................. 12

*UAW v. Gen'l Motors Corp.*,
No. 05-CV-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ............................................ 19

*Whitlock v. FSL Mgmt., LLC*,
No. 3:10-cv-562, 2015 WL 9413142 (W.D. Ky. Dec. 22, 2015) .............................................. 25

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ............................................................................................ 19

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 1, 10, 11

Fed. R. Civ. P. 23(a)(4) .............................................................................................. 12

Fed. R. Civ. P. 23(b)(3) .............................................................................................. 10

Fed. R. Civ. P. 23(c)(2) .............................................................................................. 10

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................... 10, 11

Fed. R. Civ. P. 23(e) ..................................................................................................... 6

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 11, 12

Fed. R. Civ. P. 23(e)(2)(A) ........................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ....................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................... 19

Fed. R. Civ. P. 23(e)(3) ................................................................................................ 14

Fed. R. Civ. P. 23(f) ..................................................................................................... 15

Fed. R. Civ. P. 23(h) .................................................................................................... 21

Fed. R. Evid. 408 .......................................................................................................... 3

**Other Authorities**

1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 at 90 (4th Ed. 2002) 13

3 William B. Rubenstein, *Newberg on Class Actions* § 8:36 (5th ed. 2011) ............................... 10

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.50 (4th ed. 2002) ........... 14

5 *Newberg and Rubenstein on Class Actions* § 17:1 (6th ed.) .................................................... 29

5 *Newberg and Rubenstein on Class Actions* § 17:2 (6th ed.) .................................................... 29

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION

Plaintiffs and the proposed Class have reached a nationwide class action settlement with Defendant Motility Software Solutions, Inc. ("Defendant"). The Class's meaningful recovery in this case is a $4,949,500.00 non-reversionary Settlement Fund to resolve all claims arising from the unauthorized access to Defendant's network that occurred on or about August 11, 2025 (the "Data Incident"). Defendant notified over 700,000 individuals that their Private Information may have been impacted by the Data Incident. *See* S.A. ¶ 3; *see also* Consolidated Amended Class Action Complaint ("CAC"), ECF No. 11, ¶¶ 36-45; Order Granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), ECF No. 18, ¶ 3; Azari Decl. ¶ 23.

On April 22, 2026, the Court issued an Order granting preliminary approval of the Settlement and conditionally certifying the Settlement Class. *See* Preliminary Approval Order. In doing so, the Court found the Settlement Agreement was "fair, reasonable and adequate" and that the "notice plan meets the requirements of Federal Rules of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances, and shall constitute due and efficient notice to all persons or entities entitled to notice." *Id.* ¶¶ 1, 8. The Court-approved Notice Program has now been implemented, and nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. Of the approximately 679,237 identified Settlement Class members who were sent direct notice of the Settlement, none have filed an objection and only five (5) have requested to be excluded. Azari Decl. ¶¶ 28, 32. As of the date of this motion, this case has a 4.93% claims rate, which is well within the realm of reasonableness

for data breach actions. Final Decl. ¶ 13; Azari Decl. ¶¶ 33, 34.[1]

Because Plaintiffs and Class Counsel achieved an excellent result for the Settlement Class, particularly in view of the risks and delays involved in continued litigation, Plaintiffs respectfully request that the Court grant final approval of the Settlement, grant Class Counsel's request for attorneys' fees and costs and Service Awards, and enter a final order and judgment dismissing this case.

## II. BACKGROUND

### A. Procedural History

This is a class action brought by Plaintiffs on behalf of themselves and a nationwide class of "[a]ll individuals residing in the United States who were impacted by the Data Incident." Preliminary Approval Order ¶ 2; S.A. ¶ 63. Plaintiffs alleged that cybercriminals gained unauthorized access to Defendant's computer network in August 2025 and accessed files containing Defendant's current and former clients' and their customers' Private Information. *See* CAC ¶¶ 31-32, 36-42, 54-70. In response, Defendant began sending notice letters to potentially impacted individuals in September 2025 ("Notice Letter"), providing a description of the type of Private Information involved and explaining the Data Incident. *Id.*, ¶¶ 6, 40, Ex. A.

Thereafter, two separate class action lawsuits, *G. Scott Lockwood v. Motility Software Solutions, Inc.*, No. 3:25-cv-00330-WHR-CHG, and *Heather Reynicke v. Motility Software Solutions, Inc.*, No. 3:25-cv-0331-MJN-PBS, were filed in this Court, each seeking to represent

[1] *See also Hightower v. Receivables Performance Management*, No. 2:22-CV-1683, ECF No. 85 (W.D. Wash. Dec. 6, 2024) (granting final approval of a data breach class action settlement with 0.65% claims rate); *Hendrix v. Marshall & Melhorn, LLC*, No. 3:23-cv-11881, ECF No. 28, PageID 731 (N.D. Ohio) (granting final approval of data breach class action settlement with 0.52% claims rate at final approval); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class).

the individuals impacted by the Data Incident. On October 7, 2025, Plaintiff Lockwood filed a motion to consolidate the two actions and to appoint lead counsel. ECF No. 5. The Court entered an order consolidating the actions and appointing interim lead counsel on October 15, 2025. ECF No. 6. On November 9, 2025, Plaintiffs filed their Consolidated Complaint in this Action, adding the claims of Plaintiffs Donna Mathews, John Langan, Nancy Langan, Stephen Duesler, Patrick Hubley, and Peggy L. Koller, and asserting claims for Negligence (Count I), Breach of Implied Contract (Count II), Unjust Enrichment (Count III), Invasion of Privacy (Count IV), and seeking Declaratory Judgment (Count V). *See generally* CAC.

Following consolidation, in order to conserve resources, the Parties began discussions to explore a potential resolution to this litigation. Final Decl. ¶ 7. The Parties scheduled a mediation with experienced class action mediator Bennett G. Picker of Stradley Ronon Stevens & Young, LLP. *Id*. Before mediation, Class Counsel sent Defendant a targeted list of confidential informal discovery requests pursuant to Federal Rule of Evidence 408. *Id*. ¶ 8. Defendant responded by producing information about the number of impacted individuals, the states in which they resided, the categories of Private Information involved, and the security enhancements taken since the Data Incident. *Id*. In addition, the Parties prepared detailed mediation submissions setting forth their respective views as to the strengths of Plaintiffs' case and Defendant's defenses. *Id*. This allowed the Parties to evaluate each side's respective positions.

On February 6, 2026, the Parties attended a full-day mediation with Mr. Picker. Final Decl. ¶ 9. At all times, the settlement negotiations were highly adversarial, non-collusive, and conducted at arm's length. *Id*. After exchanging numerous settlement proposals under the guidance of Mr. Picker, the Parties agreed to the material terms of the Settlement to resolve all claims on a class-wide basis. *Id.* Importantly, the Parties did not negotiate Class Counsel's attorneys' fees and cost

or Service Awards for Plaintiffs until after they agreed on material terms of the Settlement to benefit the Settlement Class. *Id.* ¶ 10.

Thereafter, the Parties engaged in engaged in many months of intense negotiations to finalize the terms of the Settlement Agreement, ultimately establishing a non-reversionary common fund settlement of $4,949,500.00 to resolve all claims related to the Data Incident for the Settlement Class. Final Decl. ¶ 9. On April 7, 2026, Plaintiffs filed their Unopposed Motion for Preliminary Approval, which the Court granted on April 22, 2026, preliminarily approving the Settlement and conditionally certifying the Class. ECF No. 18. Thereafter, Plaintiffs initiated the Notice program, through the Settlement Administrator, which resulted in direct notice reaching 94.9% of the identified Settlement Class. Azari Decl. ¶ 28.

**B. Terms of the Settlement Agreement**

As explained previously in the Motion for Preliminary Approval, under the Settlement, Defendant will pay $4,949,500.00 to establish the Settlement Fund to distribute benefits to the Settlement Class. The Settlement Class is defined as:

> **All individuals residing in the United States who were impacted by the Data Incident.**

S.A. ¶ 63. The Class specifically excludes: (a) all officers and directors of Defendant; (b) governmental entities; (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff; (d) any Settlement Class Member who timely and properly opts-out of the Settlement. *Id.* The Class is comprised of approximately 714,713 individuals. Azari Decl. ¶ 23. Under the Settlement, Defendant agrees to pay a total of $4,949,500.00 into the Settlement Fund, which will be used to make payments to Settlement Class Members and to pay the costs of Settlement Administration, attorneys' fees and costs, and Service Awards to Plaintiffs. S.A. ¶¶ 66, 73.

The Settlement secures substantial benefits for the Settlement Class, remediating and mitigating the harms potentially caused by the Data Incident.

*First*, Settlement Class Members are able to claim reimbursement for up to $5,000.00 (per claimant) for Documented Losses from fraud or identity theft that were fairly traceable to the Data Incident. *Id.* ¶ 77(a). *Second*, Settlement Class Members are eligible to claim a *pro rata* Alternate Cash payment, estimated to be $75.00. *Id.* ¶ 77(b). And *third*, all Settlement Class Members are eligible to make a claim for two years of two-bureau Credit Monitoring, which includes: (1) real time monitoring of the credit file with one credit bureau; (2) dark web scanning with immediate notification of potential unauthorized use; (3) security freezing assistance; (4) victim assistance; (5) $1,000,000.00 in identity theft insurance with no deductible; and (6) access to fraud resolution agents. *Id.* ¶ 77(c).

**C. Attorneys' Fees, Costs and Service Awards**

As compensation for the work performed and the excellent results obtained, Class Counsel respectfully requests an award of $1,649,833.33 in attorneys' fees and reimbursement of $17,105.61 in out-of-pocket litigation expenses, to be paid from the non-reversionary Settlement Fund. *Id.* ¶ 107. The fee request represents one-third of the $4,949,500.00 Settlement Fund and is contemplated by both the Settlement Agreement and the notice provided to the Class. S.A. ¶ 107; Ex. 1–2. No Settlement Class Member has objected to the Settlement, the requested attorneys' fees and costs, or the Service Awards, and only five (5) Settlement Class Members have requested exclusion. Azari Decl. ¶ 32.

The Settlement Agreement also provides for reasonable Service Awards of $2,000.00 to each of the Class Representatives. S.A. ¶ 108. The Service Awards are meant to compensate Plaintiffs for their efforts in prosecuting the Action, including maintaining contact with counsel,

assisting in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, answering counsel's many questions, and reviewing the terms of the Settlement. Final Decl. ¶ 25.

**D. The Notice Program**

On April 22, 2026, the Court entered the Preliminary Approval Order preliminarily approving the Settlement and conditionally certifying the Class. ECF No. 18.

Consistent with the Preliminary Approval Order and the requirements of Rule 23(e), on April 22, 2026, Defendant provided the Settlement Administrator, Epiq, a data file with 738,956 identified Settlement Class Member records (the "Class List"). Azari Decl. ¶ 23. Epiq deduplicated and rolled-up the records and loaded the unique identified Settlement Class Member records into its database. *Id*. These efforts resulted in 714,713 unique, identified Settlement Class Member records (of these, 14 records did not have an associated mailing address and were not sent Notice). *Id*.

**1. Individual Notice – Direct Mail**

On May 22, 2026, Epiq commenced sending 714,699 double Postcard Notices via USPS first-class mail with a postage prepaid detachable claim form ("Postcard Notice") to all identified Settlement Class Members for whom an associated mailing address was available. Azari Decl. ¶ 24. The Postcard Notice clearly and concisely summarized the Settlement and the legal rights of the Settlement Class Members. *Id*.; S.A. at Ex. 1-3. Additionally, the Postcard Notices directed the recipients to the Settlement Website where they can access important information and deadlines about the Settlement and submit claims online. Azari Decl. ¶ 24; S.A. ¶¶ 67, 85, 91.

Before sending the Postcard Notices, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address

information was up-to-date and accurately formatted for mailing. *Id*. ¶ 25. The addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. *Id*. This address updating process is standard for the industry and for the majority of promotional mailings that occur today. *Id*.

The return address on the Postcard Notices is a post office box that Epiq maintains for this Settlement. *Id*. ¶ 26. USPS automatically forwards Postcard Notices with an available forwarding address order that has not expired. *Id*. Postcard Notices returned as undeliverable are remailed to any new address available through USPS information, (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order has expired but is still within the time period in which the USPS returns the piece with the address indicated), or to better addresses that are found using a third-party address lookup service. *Id*. Upon successfully locating better addresses, Postcard Notices are promptly re-mailed. *Id*. As of July 21, 2026, Epiq had remailed 64,492 Postcard Notices. *Id*.

A Long Form Notice or Claim Form were also mailed to all persons who request one via the toll-free telephone number or other means. Azari Decl. ¶ 27. As of July 21, 2026, Epiq mailed 56 Long Form Notices and 89 Claim Forms as a result of such requests. *Id*.

**2. Notice Results**

As of July 21, 2026, a Postcard Notice was delivered to 678,474 of the 714,713 unique, identified Settlement Class members. Azari Decl. ¶ 28. This means the individual notice efforts reached approximately 94.9% of the identified Settlement Class. *Id*.

**3. Settlement Website**

On May 21, 2026, Epiq established a dedicated Settlement Website with an easy to

remember domain name (www.motilitydatabreachlitigation.com). Azari Decl. ¶ 29. Relevant documents are posted on the Settlement Website, including the Settlement Agreement, Preliminary Approval Order, Long Form Notice, Claim Form, and other case-related documents. *Id*. In addition, the Settlement Website includes relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class members can opt-out (request exclusion) or object, instructions for submitting a Claim Form, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id*. Settlement Class Members are also able to submit a Claim Form online via the Settlement Website. *Id*. The Settlement Website address was prominently displayed in all Notices. *Id*. As of July 21, 2026, there have been 11,065 unique visitor sessions to the Settlement Website, and 43,107 web pages have been presented. *Id*.

**4. Toll-Free Telephone Number and Other Contact Information**

In addition to the Settlement Website, on May 21, 2026, Epiq established a toll-free telephone number, 877-313-8704, for the Settlement. Azari Decl. ¶ 30. Callers can hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and may request a Long Form Notice or Claim Form via U.S. mail. *Id*. This automated telephone system is available 24 hours per day, 7 days per week. *Id*. The toll-free telephone number was prominently displayed in all Notice documents. *Id*. As of July 21, 2026, there have been 1,046 calls to the toll-free telephone number representing 2,698 minutes of use. *Id*.

Finally, Epiq created a postal mailing address and email address for the Settlement. *Id*. ¶ 31. These resources continue to be available to allow Settlement Class Members the opportunity to request additional information from Epiq or ask questions. *Id*.

### E. Opt-Outs and Objections

The Opt-Out and Objection Deadlines for the Settlement is August 7, 2026. *Id.* ¶ 32. As of July 21, 2026, Epiq has received five (5) opt-outs and no objections to the Settlement. *Id.*

### F. Claim Submission & Distribution

The Notices provided a detailed summary of relevant information about the Settlement, including the Settlement Website and how Settlement Class Members can submit a Claim Form online or by mail. *Id.* ¶ 33. With any method of filing a Claim Form, Settlement Class Members are given the option of receiving a digital payment or a paper check. *Id.* Epiq worked with Class Counsel and with Defendant's Counsel to select an appropriate menu of payment options. *Id.* The type of digital payment selected does not impact Epiq's compensation for its work as the Settlement Administrator, and no digital option is discouraged relative to other options. *Id.*

The deadline for Settlement Class Members to submit a Claim Form is August 7, 2026. *Id.* ¶ 34. As of July 21, 2026, Epiq has received 35,253 Claim Forms, 7,696 online and 27,557 paper, representing a claims rate of 4.93%. *See id.* Since the Claim Form Deadline has not yet passed, these numbers are preliminary and are subject to change. *Id.* Epiq anticipates the number of Claims submitted will continue to increase through the Claim Form Deadline. *Id.* As standard practice, Epiq is in the process of conducting a complete quality control review of Claim Forms received. *Id.* There is a likelihood that after detailed review, the total number of Claim Forms received will change due to duplicate and denied Claim Forms. *Id.*

## III. ARGUMENT

### A. Final Class Certification for Settlement Purposes is Appropriate

This Court preliminary approved Class Certification for Settlement purposes. Nothing has occurred since then to disturb the Court's conclusion that certification for settlement purposes is

warranted. Plaintiffs incorporate by reference § IV(B) of the Motion for Preliminary Approval (Doc. 15), which explained (in more detail) that the necessary factors under Rule 23(a) and (b)(3) are satisfied because Plaintiffs are adequate class representatives who are similarly situated with thousands of other class members, all of whom bring claims arising out of the same event. The Court should order final certification for the same reasons. *See In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 745 (E.D. Wis. 2024) ("The Court has no independent basis to question whether final certification of the class as previously defined or appointment of Plaintiffs as class representatives . . . is appropriate. Accordingly, the Court does not disturb its earlier finding that the settlement class in this matter meets the requirements of Rule23(a) and (b) and that Plaintiffs are appropriate class representatives.").

**B. The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances and was Successful.**

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). Generally, notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). However, "[n]either Rule 23 nor due process requires that every class member actually receives notice. Instead, 'notice suffices if it is reasonably calculated to reach the absent parties.'" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 927 (N.D. Ill. 2022) (quoting 3 William B. Rubenstein, *Newberg on Class Actions* § 8:36 (5th ed. 2011)). As discussed above, the comprehensive Notice Program designed by Class Counsel and executed by Epiq provided the best notice practicable under the circumstances.

Class Counsel worked closely with the Settlement Administrator to develop and implement the Notice Program preliminarily approved by the Court. As part of this program, Epiq established

a comprehensive Settlement Website and disseminated direct notice to Class Members by mail, including skip tracing and remailing upon unsuccessful deliveries. *See* Azari Decl. ¶¶ 23-31. The Notice Program provided Settlement Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). The notices informed Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if a Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that one may make an appearance through counsel; (5) information regarding the Class Representatives' request for Service Awards; (6) information regarding the payment of Class Counsel fees; and (7) how to make inquiries about the Settlement. *Compare* Azari Decl. ¶¶ 37-38, *with* Fed. R. Civ. P. 23(c)(2)(B).

Epiq estimates that through this notice program, approximately 94.9% of identified Settlement Class Members received direct notice, Azari Decl. ¶ 28, which more than satisfies the requirements of Rule 23 and due process. *See Shy v. Navistar Int'l Corp.*, No. 3:92-CV-333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) (citing Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last visited July 23, 2026)) (explaining that at least 70% of the class should receive notice). Accordingly, the notice program satisfies the requirement of Rule 23 and due process and should be approved by the Court.

**C. The Settlement Agreement Merits Final Approval**

The proposed settlement merits final approval. When deciding whether to approve a proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To make this determination, Rule 23(e)(2), as amended in 2018, directs courts to consider whether (1) the class representatives and class counsel have

adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the settlement adequately compensates the class; and (4) the settlement treats class members equitably relative to each other. *Id.* In addition to these four factors, the Sixth Circuit recently clarified that courts should also consider "(1) the likelihood of success on the merits of the case, (2) the complexity, expense, and duration of discovery and litigation, (3) the opinions of class members, representatives, and counsel, and (4) the risk of collusion or fraud." *In re E. Palestine Train Derailment*, 158 F.4th 704, 713 (6th Cir. 2025).

Although there are eight total factors, in practice, they largely overlap. *See Thomas v. Mitsubishi Electric Automotive Am., Inc.*, No. 1:24-CV-422, 2026 WL 1469413, at *7 (S.D. Ohio May 26, 2026) ("While the Court still is of the view that the four factors set forth in the as-amended version of Rule 23(e)(2) already include consideration of the four additional factors identified above, out of an abundance of caution, the Court will address all eight."). Ultimately, the Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992) (citation omitted). Applying these factors, the Court should find that the preliminarily approved settlement is fair, reasonable, and adequate, thus warranting final approval.

**1. The Class Representatives and Class Counsel Have Adequately Represented the Class**

The adequacy of representation weighs in favor of settlement approval. Rule 23(e)(2)(A) instructs courts to consider whether the class representatives and class counsel have "adequately represented the class." This largely mirrors the analysis for determining adequacy under Rule 23(a)(4). *See Thomas*, 2026 WL 1469413, at *7 ("For the same reasons explained above when finally certifying the class, the Court finds that the class representatives and class counsel have adequately represented the class.") (internal citation omitted). As discussed in the motion or

preliminary approval, Doc. 15 at PageID 230, Plaintiffs and Class Counsel are adequate representatives. Plaintiffs have no conflicts with the Class and have participated actively in the case. Coates Prelim. Decl., Doc. 15-2, ¶ 23. Moreover, proposed Class Counsel have significant experience in class and complex litigation, including hundreds of data breach class actions in state and federal courts throughout the country. *Id.*, ¶¶ 3-6, 25. Class Counsel have invested considerable time and resources into the prosecution of this action and have significant experience litigating complex class action lawsuits. *Id.*, ¶¶ 3-6.

The adequacy of representation has been reaffirmed by the success of the notice program and the reaction of the Class Members. So far, there have been thousands of claims for benefits, zero objections, and only five opt-outs. Azari Decl. ¶ 32; *cf. Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (79 objectors out of an 11,000-member class "tend[ed] to support a finding that the settlement is fair"). The Court should recognize the adequacy of representation and find that it weighs in favor of final approval.

**2. The Settlement Was Negotiated at Arm's Length, and There is No Risk of Collusion or Fraud**

Settlements resulting from arm's-length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 at 90 (4th Ed. 2002). "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Jackson v. Nationwide Ret. Sols., Inc.*, No. 2:22-CV-3499, 2024 WL 958726, at *4 (S.D. Ohio Mar. 5, 2024) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). There is no evidence of fraud and collusion in this case. Instead, the Settlement and its terms, which took months to negotiate and finalize, are the product of intensive, arms-length bargaining under the guidance of an experienced mediator. *See* Final Decl. ¶¶ 6-12. The Court should find that this factor is satisfied because there is no evidence of fraud or collusion

in this case. *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2025 WL 2119389, at *6 (S.D. Ohio July 29, 2025) ("The Court is satisfied, based on class counsel's representation and the mutual concessions in the proposed settlement agreement, which took months to finalize, that the settlement was negotiated at arm's length and was not plagued by fraud or corruption"). Therefore, the Court should conclude that the Settlement Agreement in this case was reached at arm's length.

### 3. The Likelihood of Success and the Complexity, Expense, and Duration of Litigation Balanced Against the Proposed Recovery

To assess the adequacy of relief, courts consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; and (iii) the terms of any proposed award of attorney's fees, including timing of payment. *See* Fed. R. Civ. P. 23(e)(2)(C).[2]

#### *i. Costs, Risks, and Delay of Continued Litigation*

The adequacy of the settlement's proposed relief far outweighs the potential costs and risks of continued litigation. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11-CV1332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus . . . 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Brent*, 2011 WL 3862363, at *16 (quoting 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.50 (4th ed. 2002)).

[2] This rule also asks courts to consider "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). In turn, Rule 23(e)(3) requires the parties to "file a statement identifying any agreement made in connection with the proposal." That prong is not discussed herein because there are no agreements in connection with the proposed settlement other than the Settlement Agreement itself. Final Decl. ¶ 28.

This present litigation is no different, given that it is a data privacy class action. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles on the merits. *See In re Wasserstrom Holdings, Inc. Data Breach Litig.*, No. 2:23-CV-2070, 2025 WL 1563548, at *7 (S.D. Ohio Apr. 11, 2025) ("Because they involve new technology and evolving law, the merits of data breach cases like this one are often uncertain."); *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases that were dismissed).

Class certification is another hurdle that would have to be met—and one that has been denied in certain other data breach cases. *See Cheryl Gaston v. FabFitFun, Inc.*, No. 2:20-CV9534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) (noting that "data breach cases have experienced minimal success in moving for class certification"). While some courts (including within the Sixth Circuit) have more recently granted contested motions for class certification in the data breach context, it takes years of intense litigation just to reach that point. *See, e.g., Savidge v. PharmSave, Inc.*, 727 F. Supp. 3d 661 (W.D. Ky. 2024) (certifying contested class of employees whose Social Security numbers were stolen in data breach after roughly seven years of litigation). Further, even if Plaintiffs were successful in obtaining certification of a litigation class, certification would not be set in stone. *Long v. HSBC USA Inc.*, No. 14 CIV. 6233, 2015 WL 5444651, *4 (S.D.N.Y. Sept. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing."). Given the complexity of the issues and the amount in controversy here, the defeated party would likely appeal any decision on either certification or merits.

Through the Settlement, Plaintiffs and Class Members gain reasonable, tangible benefits without having to face further delay or the risk of not receiving any relief at all. The relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. *See Jackson*, 2024 WL 958726, at *4 (holding under analogous circumstances in a data breach case that "this factor weighs in favor of approving the Settlement. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation"). Accordingly, the risk, expense, and duration of continued litigation weigh in favor of approval.

***ii. Effectiveness of Proposed Method of Distributing Relief***

Second, the method of distributing relief to Settlement Class Members is fair and effective. Because this class action relates to the unauthorized access to Class Members' Private Information that Defendant possesses, providing payments to Class Members should prove relatively straightforward. *See In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-CV-776, 2024 WL 6076646, at *6 (S.D. Ohio Sept. 10, 2024) ("Because this class action involves unauthorized access to PII that Cinfed holds—information which, by its nature, identifies class members—the Court anticipates little difficulty in disseminating notice and providing payments to the class."). The ability to efficiently distribute relief is demonstrated by the Notice Program, which achieved direct notice to 94.9% of Settlement Class Members. *See* Azari Decl. ¶ 28.

Moreover, the relief offered through the Settlement is appropriate and fair, providing Settlement Class Members with the opportunity to obtain recovery for out-of-pocket losses, alternative pro rata cash payments, and credit monitoring. *See In re Cinfed*, 2024 WL 6076646, at *6 ("Moreover, the settlement provides a two-tier system that aims to appropriately compensate class members: The agreement will first compensate any class members who can show they have

suffered actual losses traceable to the data breach, up to a $5,000 cap per individual. All other class members will receive a pro rata cash payment, assuming they file a valid claim. The Court finds that this method of relief effectively compensates class members for their respective losses.") (internal citations omitted). These benefits *In re Cinfed Fed. Credit Union Data Breach Litig.*, No. 1:23-CV-776, 2024 WL 6076646 (S.D. Ohio Sept. 10, 2024). S.A. ¶ 101. Thus, the fairness and effectiveness of distributing relief supports final approval.

#### ***iii. Terms of Proposed Award of Attorneys' Fees***

The attorneys' fees requested below are reasonable under the circumstances. Regardless, the terms of the Settlement Agreement relating to attorneys' fees do not impact the Court's determination on adequacy of relief because the Settlement Agreement does not require the payment of attorneys' fees but merely permits Class Counsel to seek them. *Compare* S.A. ¶¶ 107-09 ("This Settlement is not contingent on approval of the request for attorneys' fees, costs, and Service Awards, and if the Court denies the request or grants amounts less than what was requested, the remaining provisions of the Agreement shall remain in force."), *with Carmen v. Health Carousel, LLC*, No. 1:20-CV-313, 2025 WL 892586, at *12 (S.D. Ohio Mar. 24, 2025) ("[T]he terms of any proposed attorneys' fees don't present any bar to final approval of the amended settlement agreement itself. The agreement, after all, doesn't hinge on any specific award of attorneys' fees …."). Additionally, and as explained more fully below, the requested fees are fair, reasonable, and routinely approved. Therefore, the terms relating to attorneys' fees do not weigh against final approval.

Based on the foregoing, the Court should find that the relief, the method of distributing relief, and the terms related to attorneys' fees, are adequate and support final approval.

#### 4. The Likelihood of Success on the Merits Balanced Against the Amount and Form of Relief Offered by the Settlement Weigh in Favor of Approving the Settlement

The Settlement provides strong relief compared to the likelihood of success on the merits. "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re Gen. Tire & Rubber Co. Securities Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). "When considering this factor, the Court must balance Lead Plaintiff's likelihood of success on the merits against the relief offered in the settlement." *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 237 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). Ultimately, the Court "must determine whether [the relief afforded] falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation." *Id.* at 235 (internal citations omitted).

The total $4,949,500.00 Settlement Fund for approximately 714,713 Class Members (value of roughly $6.92 per Settlement Class Member) is well within the range of reasonableness compared to other common fund data breach settlements with similar class sizes. *See* Final Decl., ¶ 14 (including chart of comparable settlements). Although Plaintiffs are confident in the merits of their claims, as discussed above, data breach class actions are particularly risky, time consuming, and expensive to litigate. *See In re Wasserstrom*, 2025 WL 1563548, at *6-7. Furthermore, individual damages in data breach actions are "likely to be small and far outweighed by the cost of litigation." *See id.* at *5. This Court should similarly find that the Settlement is within the range of reasonableness because it provides strong relief compared to the risk, duration, and expense of further litigation.

#### 5. The Settlement Treats Settlement Class Members Equitably Relative to Each Other

Here, in accordance with Rule 23(e)(2)(D), Settlement Class Members are treated equitably relative to one another in that the Settlement provides all Settlement Class Members with the opportunity to claim one of two monetary payments and credit monitoring. *See Tate*, 2025 WL 2119389, at *7 ("The agreement provides for pro rata payments to all class members who submit valid claims, which denotes equity. And it further contemplates higher payouts for class members who either attest to lost-time costs and/or can prove specific out-of-pocket losses."). Moreover, the Settlement provides all Settlement Class Members with the opportunity to claim one of two monetary payments and credit monitoring. *See* Final Decl. ¶¶ 15-16. Thus, the relief to Settlement Class Members through the Settlement is equitable and supports granting final approval.

#### 6. The Opinions of Class Counsel, the Class Representatives, and the Class Members Support Final Approval

Class Counsel recommend the Court grant final approval because the Settlement is fair, reasonable, and adequate. *See* Final Decl. ¶ 28. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *In re Wasserstrom*, 2025 WL 1563548, at *7; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs .... [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). "In this consideration, 'the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties.'" *In re Wasserstrom*, 2025 WL 1563548, at *6 (quoting *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006)).

Class Counsel's recommendation in this case is entitled to considerable deference because the Parties were able to thoroughly evaluate the strengths of the case through informal discovery before reaching a settlement in principle. *See* Final Decl. ¶ 8. It is also relevant that the Plaintiffs support this Settlement. *See* Final Decl. ¶¶ 13, 24; *In re Wasserstrom*, 2025 WL 1563548, at *7 ("Here, that Class Counsel and Defense Counsel recommend that the Court approve the Settlement warrants deference. Class Representatives have also approved the Settlement. Accordingly, this factor supports approving the proposed Settlement."). Finally, as discussed in the adequacy of representation prong above, the positive reaction of the class supports final approval as well. *See, e.g., id.* ("Here, as described above, from a pool of over ten thousand Class Members, none objected after about 96% received notice. This positive response from the Class Members supports approving the Settlement."). Accordingly, there is overwhelming support for the Settlement.

Based on the foregoing, all of the factors identified by Rule 23 and the Sixth Circuit have been satisfied. Therefore, the Court should grant final approval because the Settlement is fair, reasonable, and adequate.

### D. Class Counsel's Requested Attorneys' Fees are Reasonable

It is well established that "[a] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund doctrine rests on the equitable premise that "persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277 (S.D. Ohio 1996). In awarding a fee from a common fund, the court's task is to "make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516

(6th Cir. 1993). Rule 23(h) likewise authorizes the Court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

For the reasons set forth below, Class Counsel's request for $1,649,833.33—one-third of the $4,949,500.00 non-reversionary common fund—is reasonable and consistent with the awards routinely approved in analogous data breach class action settlements in this District and the Sixth Circuit.

**1. It is Appropriate to Apply a Percentage-of-the-Common-Fund Analysis**

The Sixth Circuit requires only "that awards of attorneys' fees in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. In conducting this inquiry, district courts in this District apply a two-step analysis: first, the court selects the appropriate methodology—either the percentage-of-the-fund or the lodestar approach—and then it tests the reasonableness of the resulting award against the six *Ramey* factors discussed below. *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14-cv-1071, 2018 WL 11357092, at *5 (S.D. Ohio Aug. 24, 2018) (citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). The court must explain its choice of methodology and the factors considered in setting the fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Rawlings*, 9 F.3d at 516. The percentage-of-the-fund method, supplemented by a discretionary lodestar cross-check, is the appropriate framework here.

The percentage-of-the-fund method offers several practical advantages: it is straightforward to apply, it provides plaintiffs' counsel with predictable expectations of recovery, and it incentivizes the early resolution of cases that might otherwise generate years of additional litigation. *Rawlings*, 9 F.3d at 516. Critically, the percentage method also "more accurately reflects the results achieved" for the class. *Id.* For these reasons, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class

member is entitled to a share." *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271, 2023 WL 2562407, at *3 n.4 (W.D. Ky. Mar. 17, 2023) (quotation omitted); *see also Robles v. Comtrak Logistics, Inc.*, No. 15-CV-2228, 2022 WL 17672639, at *10 (W.D. Tenn. Dec. 14, 2022) ("The percentage-of-the-fund method . . . tends to be favored over the lodestar approach by courts in this circuit."); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (same).

Within that framework, percentage awards "typically . . . rang[e] from 20 to 50 percent of the common fund created." *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001); *accord Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *12 (S.D. Ohio Jan. 26, 2011); *Lott*, 2023 WL 2562407, at *3. A one-third award is standard in data breach cases within the Sixth Circuit and in Ohio. *See, e.g., Migliaccio v. Parker Hannifin Corp.*, No. 22-cv-00835, ECF No. 42 (N.D. Ohio Aug. 2, 2023) (approving $583,333.33 fee from $1,750,000 data breach common fund); *Tucker v. Marietta Area Health Care*, No. 2:22-CV-184, ECF No. 38 (S.D. Ohio Dec. 7, 2024) (Morrison, J.) (same); *In re Marshall & Melhorn, LLC Data Breach Litig.*, No. 3:23-CV-1181, ECF No. 34 (N.D. Ohio Jan. 13, 2025) (approving $266,666.67 fee from $800,000 data breach common fund); *In re Wasserstrom*, 2025 WL 1563548, at *8–10 (approving one-third fee from $350,000 data breach common fund). The Court should follow that well-established practice here.

#### 2. The *Ramey* Factors Support the Reasonableness of the Requested Award

Courts in this Circuit assess the reasonableness of a percentage fee by reference to six factors drawn from *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974): (1) the value of the benefit conferred on the class; (2) society's stake in rewarding attorneys who achieve such benefits in order to maintain an incentive for similar actions; (3) whether counsel undertook the representation on a contingent basis; (4) the value of the services on an hourly basis

(the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel for both sides. *See Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014). Each *Ramey* factor supports the requested fee.

***i. The Results Achieved in this Litigation***

The first *Ramey* factor—the benefit conferred on the class—is often the most important. *Bowling*, 922 F. Supp. at 1280. The Settlement here creates a $4,949,500.00 non-reversionary common fund and provides multiple, layered forms of relief. First, Settlement Class Members may submit claims for Documented Losses of up to $5,000.00 per individual upon presentation of reasonable documentation of fraud or identity theft traceable to the Data Incident. S.A. § 77(a). Second, as an alternative, Settlement Class Members may elect a *pro rata* Alternate Cash payment estimated at approximately $75.00, with no documentation required. *Id.* § 77(b). Third, in addition to either cash option, Settlement Class Members may claim two years of two-bureau Credit Monitoring services that include dark web scanning, security freeze assistance, victim assistance services, $1,000,000.00 in identity theft insurance with no deductible, and access to dedicated fraud resolution agents. *Id.* § 77(c). Any residual funds will be distributed *cy pres* to the Electronic Privacy Information Center. *Id.* § 110.

On a per-Class-Member basis, the Settlement yields a theoretical recovery of approximately $6.92 per individual ($4,949,500.00 divided among 714,713 Settlement Class Members). Because participation rates in data breach settlements are generally well below 100%, the actual per-claimant cash recovery is expected to substantially exceed that theoretical floor, consistent with the claims-adjusted recoveries approved in comparable data breach settlements. *See* Final Decl. ¶¶ 15-16 The Settlement's value is further bolstered by the fact that Defendant had meaningful defenses to liability. *See In re Wasserstrom*, 2025 WL 1563548, at *7 ("data breach

cases like this one are often uncertain"). Defendant has denied liability throughout and has consistently maintained that Plaintiffs' claims lack merit. Even a favorable trial verdict would almost certainly have invited an appeal, delaying or potentially eliminating any recovery for the Class. Achieving meaningful, certain relief now—rather than years from now, after summary judgment, trial, and likely appellate proceedings—is itself valuable to the Class. *See Connectivity Sys. Inc.*, 2011 WL 292008, at *4 ("Given the time value of money, a future recovery, even one greater than the proposed Settlement Amount, may be less valuable to the Settlement Class than receiving the benefits of the Settlement Agreement now."). The first *Ramey* factor strongly supports the requested fee.

***ii. The Requested Fee Provides Adequate Incentive to Undertake this Representation for the Benefit of Others***

The second *Ramey* factor recognizes that the contingent class action bar plays an essential role in vindicating the rights of consumers whose individual damages would never justify individual suits. Without counsel willing to advance the time and out-of-pocket costs needed to prosecute claims like these, individual Settlement Class Members—whose per-person damages here are modest—would have effectively no avenue for redress. *See Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*, No. 15-CV-2956, 2022 WL 4079559, at *6 (S.D. Ohio Sept. 6, 2022) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own."); *In re Wasserstrom*, 2025 WL 1563548, at *9 ("Without a class action, the Class Members would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their case."). The requested fee supports the continued availability of competent counsel to bring data breach cases of this type, and this factor supports approval.

### *iii. Class Counsel Undertook this Representation on a Contingent Basis*

The third *Ramey* factor "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case," *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 765 (S.D. Ohio 2007), and some courts have described the risk of non-recovery as the single most important consideration in setting a fee, *id.* (collecting cases). "[C]ontingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery." *Whitlock v. FSL Mgmt., LLC*, No. 3:10-cv-562, 2015 WL 9413142, at *9 (W.D. Ky. Dec. 22, 2015) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001)).

Class Counsel took this case on a purely contingent basis. Final Decl. ¶ 17. From the outset, Class Counsel advanced all out-of-pocket expenses and devoted significant attorney time to the matter with no guarantee—and no expectation absent success—of payment. *See id.* ¶¶ 17-18. Had the case been dismissed, summary judgment entered against Plaintiffs, or judgment ultimately for Defendant, Class Counsel would have recovered nothing. *See id.* This factor weighs in favor of the requested fee. *Cf. In re Wasserstrom*, 2025 WL 1563548, at *9 ("Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money with no guarantee of recovery. This factor favors approving the requested fee award.").

### *iv. The Value of the Services Supports the Requested Fee*

The fourth *Ramey* factor asks the Court to consider the hourly value of the services rendered. In percentage-of-the-fund cases, courts in this District regularly use a discretionary lodestar cross-check to confirm the reasonableness of a percentage award. Class Counsel are prepared to submit detailed time and expense records for the Court's review upon request.[3]

[3] Class Counsel have maintained detailed time and expense records supporting their lodestar and expense figures and can submit them for the Court's in camera review upon request.

As detailed in the Final Declaration, Class Counsel have collectively expended approximately 416 hours of attorney and paralegal time on this matter to date, at customary hourly rates that have been approved as reasonable in other complex class actions in this District, yielding a current lodestar of approximately $314,539.45. Final Decl. ¶¶ 20-21. Class Counsel estimates that 30-40 hours of additional time will be required to work with Epiq to administer the Settlement, respond to Settlement Class Member inquiries, prepare for and attend the Final Approval Hearing, and oversee the claims process. The requested fee of $1,649,833.33 thus presently represents a modest multiplier of approximately 4.8, and likely eventually to be approximately 4.4, Final Decl. ¶ 22, well within the range routinely approved as reasonable in this Circuit. *See, e.g., In re Cardinal Health*, 528 F. Supp. 2d at 768 (collecting cases approving multipliers in the 3-to-5 range). This factor supports approval.

***v. The Complexity of the Litigation Supports the Requested Fee***

As discussed above, data breach class actions are notoriously complex. They involve rapidly evolving legal doctrines on Article III standing, novel applications of negligence and contract principles to electronic data, technical issues regarding cybersecurity practices and forensic causation, and significant variations in state-law consumer protection regimes across a nationwide class. Although Class Counsel remains confident in the merits of Plaintiffs' claims, the risks attending continued litigation—whether at the pleadings, class certification, summary judgment, trial, or appellate stage—are substantial. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (C.D. Cal. 2008) ("The risk that further litigation might result in plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees."). The complexity factor supports the requested award.

### *vi. The Professional Skill of Counsel on Both Sides Supports the Requested Fee*

The sixth *Ramey* factor considers the professional skill and experience of counsel on both sides. Class Counsel here—Markovits, Stock & DeMarco, LLC; Strauss Borrelli, PLLC; Milberg, PLLC; and Kopelowitz Ostrow P.A.—devoted substantial portions of their practices to data breach and privacy class litigation and are regularly appointed as class counsel in similar matters across the country. *See* Final Decl. ¶¶ 4, 28. This Court has previously recognized Markovits, Stock & DeMarco, LLC for its experience and competence in class and other complex litigation. *See, e.g., Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *4 (S.D. Ohio June 13, 2022) ("Class Counsel, the law firm Markovits, Stock & DeMarco, LLC, are qualified and are known within this District for handling complex cases including class action cases such as this one."). Defendant, in turn, has been represented by experienced counsel with a deep practice defending data breach litigation. The professionalism and experience of counsel on both sides further support the reasonableness of the requested fee.

### *vii. The Fee Request Is Supported by the Class Representatives*

Although the common fund doctrine is itself an independent basis for the requested fee—operating separately from any contingency fee agreement between counsel and the named Plaintiffs—the Class Representatives' endorsement of the requested fee provides additional confirmation that the award is fair. Each Class Representative has reviewed the Settlement, the fee request, and the requested expense reimbursement, and each supports Class Counsel's application as filed. Final Decl. ¶ 24. Taking all seven considerations together, a fee of $1,649,833.33—representing one-third of the $4,949,500.00 Settlement Fund—is fair and reasonable and falls comfortably within the range of awards approved by the Sixth Circuit and the district courts of Ohio in comparable matters.

### E. Class Counsel's Requested Costs Are Reasonable

Class Counsel are also entitled to reimbursement of the out-of-pocket costs they incurred in prosecuting this litigation and obtaining the Settlement. "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining settlement, including but not limited to costs incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses." *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534–35 (E.D. Mich. 2003)). Recoverable expense categories include "the cost of experts and consultants . . . computerized research; travel and lodging expenses; photocopying cost; filing and witness fees; postage and overnight delivery; and the cost of court reporters and depositions." *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

Here, Class Counsel have incurred $17,105.61 in reasonable out-of-pocket costs and expenses prosecuting this action. Final Decl. ¶¶ 19-20. As detailed in the Final Declaration, each category of expense was necessary to, and incurred in direct support of, this litigation. *See id.* Class Counsel are accordingly entitled to reimbursement of those reasonable amounts from the Settlement Fund.

### F. The Requested Service Awards are Reasonable

Plaintiffs request modest Service Awards of $2,000.00 for each of the nine Class Representatives. Service awards "are 'efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class.'" *In re Wasserstrom*, 2025 WL 1563548, at *9 (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir.

2003)). Such awards "are now paid in most class suits and average between $10,000 to $15,000 per class representative." 5 *Newberg and Rubenstein on Class Actions* § 17:1 (6th ed.); *see, e.g., In re E. Palestine Train Derailment*, 158 F.4th at 714 ("we disagree that the district court unreasonably approved the $15,000 incentive payments to class representatives").[4]

Courts routinely approve service awards greater than the amounts sought here in comparable data breach class actions that resolved during or shortly after the pleading stage. *See, e.g., In re Wasserstrom*, 2025 WL 1563548, at *9 (approving $5,000 service awards in a data breach case that settled at the pleading stage); *Jackson*, 2024 WL 958726, at *7 (same); *Tucker v. Marietta Area Healthcare, Inc.*, No. 2:22-cv-184, ECF No. 38 ¶ 7 (S.D. Ohio Dec. 8, 2023) (approving $5,000 service awards in data breach action that settled shortly after the pleading stage); *Linman v. Marten Transport, Ltd.*, No. 3:22-CV-204, 2024 WL 5076031, at *3 (W.D. Wis. Dec. 11, 2024) (same); *In re CorrectCare Data Breach Litig.*, No. CV 5:22-319, 2024 WL 4211480, at *5 (E.D. Ky. Sept. 17, 2024) (approving "relatively modest" awards of $2,500 in a data breach case that settled at the pleading stage).

Each Class Representative here has materially contributed to obtaining the Settlement: by communicating with counsel about the Data Incident and its impact, by providing information necessary to draft and verify the pleadings, by responding to informal discovery, by reviewing key case documents, and by remaining engaged with the litigation through resolution, remained in touch with Class Counsel throughout the pendency of this litigation, answered Class Counsel's many questions, and reviewed the terms of and approved the Settlement Agreement. *See* Final Decl. ¶ 25. Each also accepted the litigation risks of acting as a named representative on behalf of

[4] Courts use the terms "incentive award" and "service award" interchangeably. *See* 5 *Newberg and Rubenstein on Class Actions* § 17:2 (6th ed.).

an absent class of approximately 714,713 individuals. Therefore, the requested $2,000.00 Service Awards—well below the amounts routinely approved in this Circuit—reflect an appropriate and proportionate recognition of those contributions.

## IV. CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs respectfully request that the Court grant final approval of class action settlement, including authorizing the payment of settlement benefits to Settlement Class Members as set forth in the Settlement Agreement and awarding Service Awards in the amount of $2,000.00 to each Class Representative ($18,000.00 total), $1,649,833.33 in reasonable attorneys' fees (up to one-third of the Settlement Fund) to Class Counsel, $17,105.61 for Class Counsel's reasonable costs and expenses, and the cost of settlement administration (totaling $581,930.00 through June 2026). A proposed order is attached as **Exhibit 3**.

Date: July 23, 2026

Respectfully submitted,

/s/ *Terence R. Coates*
Terence R. Coates (0085579)
Dylan J. Gould (0097954)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Raina Borrelli (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

Gary M. Klinger (*pro hac vice*)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 6060
Telephone: (866) 252-0878
gklinger@milberg.com

Jeff Ostrow (*pro hac vice*)
KOPELOWITZ OSTROW P.A.
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2026, I served the foregoing upon all parties through their counsel of record by filing it with the Court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Terence R. Coates*
Terence R. Coates (0085579)